OPINION
{¶ 1} On January 7, 2002, the Stark County Grand Jury indicted appellant, Ronald Lee Hawkins, on one count of rape with a firearm specification in violation of R.C. 2907.02, one count of burglary with a firearm specification in violation of R.C. 2911.12 and one count of menacing by stalking in violation of R.C. 2903.211. Said charges arose from incidents involving appellant's "girlfriend," Renee Duchon, on October 6, 2001 and continuing to on or about November 19, 2001. Ms. Duchon had dated appellant, but the two had broken up sometime in September of 2001. Ms. Duchon accused appellant of breaking into her home on October 6, 2001, brandishing a firearm and raping her. Ms. Duchon did not call the police until November 19, 2001 after repeated incidents of harassment.
 {¶ 2} A jury trial commenced on February 12, 2002. The jury found appellant not guilty of the rape charge and the two firearm specifications, but guilty of the burglary and menacing by stalking charges. By judgment entry filed February 21, 2002, the trial court sentenced appellant to an aggregate term of eight years and five months in prison.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration.
 {¶ 4} Assignments of error are as follows:
I
 {¶ 5} "APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
II
 {¶ 6} "CONSECUTIVE SENTENCES ARE CONTRARY TO LAW WHERE THE SENTENCING COURT FAILS TO MAKE THE REQUISITE FINDINGS."
 I {¶ 7} Appellant claims his conviction of burglary and menacing by stalking was against the manifest weight of the evidence. We disagree.
 {¶ 8} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175. See also, State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 9} Appellant was convicted of burglary in violation of R.C.2911.12 which states as follows:
 {¶ 10} "(A) No person, by force, stealth, or deception, shall do any of the following:
 {¶ 11} "(1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense."
 {¶ 12} Appellant was also convicted of menacing by stalking in violation of R.C. 2903.211 which states "[n]o person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person."
 {¶ 13} Appellant challenges the jury's verdict on the burglary charge by attacking the credibility of the victim, Renee Duchon. Appellant argues because the jury did not believe
 {¶ 14} Ms. Duchon's testimony regarding the rape charge or the firearm specifications that occurred on the same night as the burglary, how could the jury believe her testimony on the burglary charge?
 {¶ 15} Although clearly the jury disregarded Ms. Duchon's testimony on appellant brandishing a firearm and raping her, we nonetheless find there was other collaborating testimony regarding the burglary charge. Ms. Duchon testified that in a telephone call after the incident, appellant admitted that just prior to the events on October 6, 2001, he broke into her home through a window, took "some stuff" out of the home and unlocked a basement window. T. at 148. Mark Hill, an individual present in Ms. Duchon's home during the incident on October 6, 2001, testified to overhearing appellant and Ms. Duchon arguing and appellant threatening Ms. Duchon. T. at 227-228. Several witnesses testified to incidents of appellant banging and kicking the doors and windows of Ms. Duchon's home, arguing with Ms. Duchon and lurking about the back of her home. T. at 239-241, 278-279, 291-293. Based upon the collaborating testimony of Mr. Hill and the incidents described by the other witnesses, we find the jury could have found Ms. Duchon's testimony regarding the burglary credible.
 {¶ 16} As for the menacing by stalking charge, Ms. Duchon testified in October and November of 2001, appellant called her house constantly. T. at 150, 152. On November 13, 2001, appellant arrived at her home at 4:45 a.m. and started ringing her doorbell and banging her doors. T. at 163-164. Appellant called her names and scared her children. T. at 164. After she threatened to call the police, appellant drove his vehicle through her backyard to get to her bedroom window. Id. Thereafter, appellant called her on the telephone. T. at 164-165. After she changed her phone number, appellant called her father's home "nonstop" trying to get a hold of her. T. at 165-166. Appellant repeatedly called her at work and left messages and arrived at her work unexpectedly. T. at 166-167.
 {¶ 17} On November 15, 2001, appellant arrived at her home and told her friend "if you don't open up the F'ing door, I'm going to start slicing the top of her car." T. at 170.
 {¶ 18} Several witnesses corroborated Ms. Duchon's account of appellant's actions during the months of October and November, 2001.
 {¶ 19} Leeann Cosgrove, Ms. Duchon's friend, testified on November 15, 2001, appellant arrived at Ms. Duchon's home and banged on the doors and windows and threatened to slice the roof if she did not let him in. T at 238-241. Ms. Cosgrove stated Ms. Duchon was "[v]ery scared to walk out of her door. Very scared to leave work. Very scared to go to work." T. at 241.
 {¶ 20} Paul Duchon, Ms. Duchon's father, testified on November 14, 2001, appellant repeatedly called his home looking for Ms. Duchon. T. at 251. The calls started around 4:00 a.m. and continued throughout the morning. T. at 251-252. During one call, appellant told Mr. Duchon "you're going to miss her when she is gone." T. at 252. Appellant called Mr. Duchon several times, "[n]ot just that day, other days and any hour of the day or night." Id. Mr. Duchon described his daughter's behavior during the month of November, 2001 as very "skittish" and "jumpy." T. at 258. Ms. Duchon would take different routes to work and borrow her father's vehicle "just try to be incognito so nobody would know where she was or what she was driving." Id.
 {¶ 21} Danielle Chavarria, Ms. Duchon's cousin, testified in November of 2001, Ms. Duchon was scared of appellant. T. at 275. Ms. Duchon would stay at Ms. Chavarria's home and "hide." Id. Appellant would call the Chavarria home repeatedly, looking for Ms. Duchon. T. at 276.
 {¶ 22} Carolyn Cordray, Ms. Duchon's co-worker, testified on November 13, 2001, appellant arrived at work and called Ms. Duchon several times. T. at 281-284. Ms. Cordray described Ms. Duchon as "shaky" and "nervous." T. at 282.
 {¶ 23} Laura Emery, Ms. Duchon's neighbor, testified in November of 2001, she observed appellant lurking about Ms. Duchon's driveway and the back of her home. T. at 290. Appellant would drive by Ms. Duchon's home several times a day. T. at 292-293.
 {¶ 24} We find sufficient credible evidence, if believed, to find appellant guilty of burglary and menacing by stalking, and no manifest miscarriage of justice.
 {¶ 25} Assignment of Error I is denied.
 II {¶ 26} Appellant claims his consecutive sentences were contrary to law because the trial court failed to make the required statutory findings. We disagree.
 {¶ 27} R.C. 2953.08 governs an appeal of sentence for felony. Subsection (G)(2) states as follows:
 {¶ 28} "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
 {¶ 29} "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (E)(4) of section 2929.14, or division (H) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
 {¶ 30} "(b) That the sentence is otherwise contrary to law."
 {¶ 31} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 32} Appellant was convicted of burglary in violation of R.C.2911.12, a felony of the second degree, and menacing by stalking in violation of R.C. 2903.211, a felony of the fourth degree. R.C. 2911.12(C) and R.C. 2903.211(B)(2). Pursuant to R.C. 2929.14(A)(2) and (4), felonies of the second degree are punishable by "two, three, four, five, six, seven, or eight years" and felonies of the fourth degree are punishable by "six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, or eighteen months."
 {¶ 33} By judgment entry filed February 21, 2002, the trial court sentenced appellant to seven years on the burglary charge and seventeen months on the menacing by stalking charge, to be run consecutively.
 {¶ 34} R.C. 2929.14(E)(4) governs consecutive sentences and states as follows:
 {¶ 35} "(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
* * *
 {¶ 36} "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 37} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 38} During the sentencing hearing, the trial court found the following on the issues of seriousness of the offense and recidivism:
 {¶ 39} "Very well. In regards to the recidivism factors listed in Revised Code Section 2929.12
(D) I do find that the Defendant has not responded favorably to sanctions for prior criminal convictions.
 {¶ 40} "In regard to the seriousness factors that are set forth in 2929.12 (B), the Court does take note of the fact that the stalking by menacing does have contained in it itself violence factors.
 {¶ 41} "The Court, of course, is also familiar with the testimony in this case.
* * *
 {¶ 42} "For the reasons that the Court has stated on the record and after consideration of the factors in Revised Code Section 2929.12, the Court finds that prison is consistent with the purposes of Revised Code of 2929.11 in that the Defendant is not amenable to an available community control sanction.
 {¶ 43} "In discussing and considering whether the minimum is applicable in this case, the Court looks to the fact that the Defendant has previous convictions and has been to prison before and finds that the minimum is not the appropriate sentence in this case and it would demean the seriousness of the crime to which the Defendant has been found guilty by a jury.
 {¶ 44} "In regard to consecutive or concurrent, the Court does find that in light of the seriousness of the offender's conduct that it is appropriate to protect the other citizens of the State of Ohio, that it would be appropriate to have the sentences served consecutively."
February 12, 2002 T. at 11 and 12-13, respectively.
 {¶ 45} Upon review, we cannot find clear and convincing evidence that the record does not support the consecutive nature of the sentences or that the aggregate sentence is otherwise contrary to law.
 {¶ 46} Assignment of Error II is denied.
 {¶ 47} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed.
By Farmer, J., Gwin, P.J. and Boggins, J. concur.